## BENJAMIN SHAW *versus* SETH EMERY.

The plaintiff in a suit upon a promissory note, having shown without objection that the defendant's name was subscribed to it by his wife in his absence, and that it was given by her in exchange for another note of defendant of a like amount; the Court *held* that the conversation which took place at the time in regard to the transaction was part of the *res gestæ* and might be put in evidence in the case.

The plaintiff having introduced proof of the execution of the note by defendant's wife and of the conversation attending the transaction, without any infringment of legal principles, the evidence thus properly adduced could not become illegal, in consequence of plaintiff's failure to show that defendant had ratified the acts of his wife.

Evidence to impugn the character of a witness is commonly to be confined to his character for truth.

Testimony to show the improbability of a transaction as stated by a witness, but having no tendency to show that he had given a different account of it, is not a mode of impeaching him known to the law.

ON EXECPTIONS from *Nisi Prius*, CUTTING, J., presiding.

This was an action of ASSUMPSIT upon an alleged promissory note payable to bearer and witnessed.

The subscribing witness testified that the note was written and signed by the wife of the defendant; that the defendant was not present, and that the note was delivered by her to one William H. Snell; that Snell came to defendant's house in his absence with a note similar in amount, which the defendant had previously given to said Snell, payable to one Ellis, and induced her to sign her husband's name to the note in suit and give it in exchange for the one brought by Snell.

The plaintiff then called William H. Snell as a witness to prove that he sold the note to the plaintiff as his own property, and without telling the plaintiff that defendant's wife gave the note.

The Court excluded the witness. The plaintiff gave him a release, and he was then examined.

The defendant objected to the witness' stating to the jury the conversation that took place between him and defendant's wife at the time she gave the note; he did not object to proof of the acts done at the time. The Court overruled the objec-

tion and allowed the witness to detail fully the conversation that took place between the witness and the defendant's wife.

Snell also testified that he sold the note to the plaintiff the day he received it from the defendant's wife, without telling him that the wife gave the note; and he testified that he was authorized to dispose of it; that about ten days after, he met defendant alone in a swamp forty or fifty rods from any person or house, informed him what he and defendant's wife had done, and that defendant replied, "It was all right; he should have done just so if he had been at home." He also testified that he had no authority from the plaintiff to procure a ratification of said note.

The defendant introduced evidence to show that the witness, soon after the transaction, had given an account of the meeting with the defendant widely different from that testified to by him at the trial; and also to impeach the general character of the witness for truth. He also relied upon the position of the witness in the matter as affecting his credibility.

He also offered to prove for the purpose of showing the improbability of any such ratification as that testified to by the witness, that the witness Snell, a short time previous to the giving of the note by the wife, sold the defendant a horse for which he paid him forty-five dollars; that he warranted the horse to be sound and kind and not exceeding twelve years old, and agreed at the same time that if the horse was not what he warranted him to be, he would take him back and furnish another satisfactory to the defendant; that the horse proved to be twenty-two years old, was unable to eat hay, was unsound and worthless, and that Snell was therefore called upon by defendant to make good his warranty; that he took back this horse and brought the defendant another horse which he said was just such a horse as defendant wanted for his family's use, and he warranted the horse to be sound, kind, and worth seventy-five dollars; that the defendant, relying upon his representations, was induced to give him the thirty dollar note spoken of in the testimony of the subscribing witness to the note in suit, in addition to the forty-five

dollars already paid him, all of which was the price agreed upon for the last horse; that it was agreed at the time and as part of the trade that if this horse did not prove to be what Snell warrranted him to be, the note was to be given up to the defendant and to be void; that within four days after he received the last horse and several days prior to the time when Snell testified he met the defendant in the swamp, as before stated, the defendant ascertained that the last horse was very different from what he was warranted to be by Snell, was unsound, unfit and unsafe for his family's use, and had the heaves badly, and was not in fact worth over twenty dollars. This evidence the Court excluded, and the jury returned a verdict for the plaintiff.

*D. D. Stewart,* for defendant.

1. The witness was allowed to detail fully, against the defendant's objection, the whole conversation between himself and defendant's wife, though defendant was not present; this evidence was *hearsay* of the broadest kind. His reasons and the wife's replies, were entirely inadmissible. 1 Greenl. Ev. 124. They were no part of the *res gestæ,* because neither the witness nor defendant's wife was authorized to act for him. *O'Kelley* v. *O'Kelley,* 8 Met. 440; *Wright* v. *Deklyne,* 1 Peters' C. C. R. 203.

2. The ratification attempted to be proved was not made to the plaintiff, or any person by him authorized to receive it. There was no *assent of the two minds,* necessary to the contract. *Whitney* v. *Bigelow,* 4 Pick. 113.

3. The defendant offered to prove, for the purpose of showing the improbability of ratification, certain facts, which, if admissible, would have convinced any person of the improbability of such ratification. The evidence offered related to the *execution itself* of the note, and therefore was admissible, though the plaintiff was indorsee. Testimony cannot be excluded which would have a tendency, however remote, to establish the probability or improbability of the fact in controversy. *Trull* v. *True,* 33 Maine, 367.

*J. A. Peters* and *J. Hill*, for plaintiff.

1. The conversation accompanying the act of giving the note, was clearly admissible as part of the *res gestæ*.

2. The testimony as to the consideration of the note, was offered to impeach the witness, and for no other reason. For such purpose, it could not be received. 1 Greenl. Ev. 52; *Robinson* v. *Heard*, 15 Maine, 296; *Scott* v. *Hall*, 16 Maine, 326.

TENNEY, C. J. — According to evidence not objected to, the defendant's wife, in his absence, was induced by William H. Snell, to sign her husband's name to the note in suit, and to exchange it for one of the same amount given by the defendant to Snell, but running to Charles B. Ellis; and, on the same day, Snell sold the same to the plaintiff.

Snell being released by the plaintiff, was allowed, against the objection of the defendant, to detail fully the conversation which took place between the witness and the defendant's wife, at the time the note was signed by her; but the defendant made no objection to proof of the acts done at the same time.

In order to maintain the action, the plaintiff undertook to prove, first, the manner in which the note in suit came into existence, and by whom it was signed; and second, that the signature of the wife of the defendant, upon the note, was adopted by him, and her act ratified. No objection was made to this, if the proof was competent.

The acts performed in preparing and signing the note in suit, and exchanging it for the one produced by Snell, cannot be supposed to have occurred without any conversation connected therewith, especially if the defendant's wife was induced by Snell to perform the acts done by her. The expressed wish for the change of notes, of Snell, and the willingness of the wife to sign the note for her husband, must have been made known by one to the other, through the means of speech, when they were in each other's presence. Such conversation was clearly a part of the *res gestæ*, so far

as it took place in connection with the acts stated in evidence. Other conversation may have taken place at the time, having no relevancy to the issue; but the case does not so find, and it cannot be assumed.

When Snell informed the defendant, afterwards, what he and his wife had done, the latter replied, " it was all right, he should have done just so, if he had been at home." The conversation attending the signing of the note, though verbal, were acts, equally with others, and were equally embraced by the most precise rules in the use of language within the meaning of the witness' statement, that he told the defendant " what he and the defendant's wife had done." If Snell had omitted to inform the defendant of the material parts of the conversation pertaining to the transaction, the statement, that he told him what he and his wife had done, was untrue.

If, however, the conversation was not in fact communicated by Snell to the defendant, in connection with the information of the acts done, the ruling of the Court, to which exceptions were taken, upon this point was not erroneous.

It being competent for the plaintiff to prove that the note was signed by the defendant's wife, with conversation connected with it, as we have already decided, it did not become otherwise, because subsequently in the course of the trial, he failed to prove the ratification by the defendant, of her act in putting his name to the paper. The former being established without any infringement of legal principle, the failure to prove the ratification, did not render the evidence, which was proper when adduced, entirely illegal afterwards. If it did not appear, from Snell's testimony, that he stated the conversation between himself and the defendant's wife, as well as the other acts, to him, the Judge could have been requested to instruct the jury on the consequence of such omission. But on the point of ratification no exceptions are taken to any ruling, instruction or refusal to instruct.

The defendant's counsel insists, that as it appears in the evidence reported, that at the time of the supposed ratification of the acts of the wife of the defendant, by him, his con-

versation was with Snell, and after he had parted with all interest in the note, the ratification, even if otherwise sufficient, cannot avail the plaintiff. When this case was before the law Court at a previous term, this point was presented by the defendant, and it was then open to him; but the fact does not appear to have been regarded by the Court as fatal to the plaintiff's recovery. *Shaw* v. *Emery*, 38 Maine, 484. But this point was not taken at the last trial, and the argument thereon is inappropriate.

The testimony offered by the defendant to show the improbability of the transaction, as stated by the witness Snell, was not a mode of impeaching the witness known to the law. The evidence offered had no tendency to show, that the witness had given a different account of the transaction, concerning which he testified, and it does not appear that his attention was called to the matter, which the defendant offered to prove. Evidence to impugn the character of a witness is commonly to be confined to his character for truth. *Commomwealth* v. *Moore*, 3 Pick. 194. *Exceptions overruled.*

HATHAWAY, CUTTING and GOODENOW, J. J., concurred.
RICE, J., dissented.